

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable D. C. Greer
State Highway Engineer
Texas Highway Department
Austin, Texas

Dear Sir:

Opinion No. 0-5713
Re: Are funds withheld by the State
Highway Commission under Article
5472(a) and Article 5472(b),
V. A. C. S., available for the
payment of the judgment in Cause
No. 68,639, in the 98th District
Court of Travis County, Texas,
styled E. I. dePont deNemours &
Co., et al, plaintiffs vs. Brady
P. Gentry, Chairman of the State
Highway Commission of Texas, et
al, defendants, and a related
question.

We are in receipt of your communication dated
November 17, 1943, in which you request an opinion from this
department in regard to the above matter. We quote your re-
quest in full as follows:

"The State Highway Commission on May 27, 1932
received bids for the construction of a portion of
State Highway 27 in Sutton County. Tom Archer and
Company submitted the lowest bid for the proposed
improvement and a contract was awarded to him for
this work on May 27, 1932. The contractor began
work on July 18, 1932 but after performing one months
work on this contract he defaulted and a receiver was

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. D. C. Greer, Page 2

appointed. This receiver proceeded with the ful-
fillment of this contract but at the request of
the surety company the receivership was dissolved
and the surety company took over the construction
of the project on December 31, 1932. On or about
May 4, 1933 the surety company defaulted and after
having been given notice by the State Highway De-
partment to complete this project and they failing
to resume work in accordance with the contract the
State took over the completion of this contract on
May 15, 1933. To complete this contract the State
received bids and awarded a contract to the Womack-
Henning Construction Company for the remaining work
on June 29, 1933. While the work as required by
this contract was physically completed on October
10, 1933 the contract has not as of this date been
completed due to the fact that the State withheld
from monies due the contractor funds on account of
labor and materials claims having been filed with
the Department.

"After paying to the Womack-Henning Construc-
tion Company the amount due them for the completion
of this contract the State now holds a balance of
$1,835.45 of the monies due the contractor on ac-
count of this project. Recently E. I. Dupont De
Nemours and Company filed a suit against the con-
tractor, his surety company and the State Highway
Department to establish a lien against the contrac-
tors funds that we now hold. On November 3, 1943
the District Judge of the 98th District Court of
Travis County entered a judgment against the con-
tractor and the surety company and the State of
Texas for the $1,835.45. The requirements of this
judgment are that the State of Texas pay into the
Registery of the Court the funds of the contractor
that it now holds to be distributed to the various
persons who have filed and did establish in this
court their claim for labor and materials in con-
nection with the construction of this project.
When the State Highway Commission received citation
in connection with this suit this information was

Hon. D. C. Greer, Page 3

passed to your office and your office made a
constructive tender of the $1,835.45 funds of
the contractor into the Registery of the Court.

"In connection with the $1,835.45 funds that
the State now holds, it is our thought that this
money is the property of the contractor and is
being held in the Treasury either to pay to him
or to pay to claimants in the event that the claim
is established in a court of competent jurisdiction,
the State being merely a stake holder of these funds.

"The question has now been raised as to whether
the contractors funds can be withdrawn from the State
Treasurer due to the constitutional provision that
the Legislature has authority to appropriate funds
not longer than two years.

"The Legislature every two years reappropriates
all State highway funds not previously expended as
well as all new funds coming into the Treasury and
it is our thought that all unexpended funds for con-
tractual obligations are reappropriated by the Legis-
lature each two years for the payment of the State's
obligations on such contract as well as other obliga-
tions.

"Article 5472 (b) requires 'that no public
official, when so notified in writing, shall pay all
of said monies, bond or warrants to said contractor,
but shall retain enough of said monies, bonds or
warrants to pay said claim, in case it is established
by judgment in a court of proper jurisdiction----'.
Under this statute funds that were due the contractor
were retained on account of the filing of labor and
material claims and the State would have been in
violation of the statutes had it paid all the monies
to the contractor upon physical completion of the
work called for by the contractor. The State only
now is in a position to legally dispose of the funds
of the contractor, a judgment having been rendered
on November 3, 1943 against the contractor in favor
of the claimants. It is thought that the State is

not at this time barred from the completion of its contractual obligation.

"Section 6 of Article VIII of the State Constitution provides that 'no money shall be drawn from the Treasurer but in pursuance of the specified appropriation made by law; nor shall any appropriation of money be made for a longer terms than two years-----'.

"We would like an opinion from your office as to whether or not funds are available for the payment of the balance of the funds due under this contract at this time.

"Article 4357 provides that 'no claim shall be paid from appropriations unless presented to the Comptroller for payment within two years of the fiscal years for which such appropriation was made-----'.

"We would further like to have an opinion from your office as to whether or not the State is barred from making payments on account of a contract when funds were held by the State on account of the filing of claims under Article 5472 (a) and (b) when payment could not have been made within two years from the close of the fiscal year from which such appropriation was made due to the fact that the claim had not been released or a judgment entered prior to this time.

"For your information there is attached hereto a copy of the judgment in Cause No. 68639 in the 98th District Court of Travis County, Texas in the suit styled E. I. DeFont De Nemours and Company et al. vs. Brady P. Gentry, Chairman of the State Highway Commission of Texas et al."

We shall answer both of your questions together as the first question is specific and the second question is merely a general one dealing with the same subject matter.

Since your letter has set out in detail the provisions of the Constitution and the Statutes, we will not burden your time by reiterating the same herein.

In the case of Texas Company v. Schriewer, 38 S. W. (2d) 141, the Court held that Articles 5472a and 5472b, Vernon's Annotated Civil Statutes, gave sub-contractors, as well as general contractors, a lien on money paid for public improvements. That Court in that case further held that the State Highway Department in view of Articles 6672 to 6674, and Articles 6674c, 6674e, 6674l and 6694, have supervision over the expenditure of highway funds and that the State Treasurer is merely a depository of such funds.

It has been held by the courts of Texas that all State highways are under the exclusive control and management of the State Highway Department.

The Court held in the case of Atkins v. Texas Highway Department, 201 S. W. 226, that the Legislature in declaring that all funds coming into the hands of the State Highway Commission derived from registration fees prescribed for motor vehicles, or from any other source, shall be deposited with the State Treasurer to a special account designated as the "State Highway Fund" account, and that same is a valid appropriation, though not, of course, specifying the amounts to be realized; similar provisions for contingent amounts having long been recognized as valid appropriations.

Article 4357, Vernon's Annotated Civil Statutes, provides as follows:

"* * * No claim shall be paid from appropriations unless presented to the Comptroller for payment within two (2) years from the close of the fiscal year for which such appropriations were made, but any claim not presented for payment within such period may be presented to the Legislature as other claims for which no appropriations are available.* * *"

In the case of Winder Bros. v. Sterling, 12 S. W. (2d) 127, the Court, on page 129, in dealing with lien claimants simi-

lar to these as parties in the case presented in your inquiry, said: -

"The provision for withholding money, warrants, etc., for payment of a claim as and when reduced to judgment, with lack of requirement for judgment within any given time, it is said, renders the statute indefinite. To this is added a charge of arbitrariness in forcing the contractor to await the pleasure of the claimant in respect to time of judgment. The statute, however, but names a contingency upon whose occurrence in an appropriate case moneys, etc., become due and payable to the contractor, and for which, as noted, the parties to the contract (by reference and imputation) stipulate. Besides, no reason is apparent for precluding adjudication of the claim or its invalidity on move of the contractor, if he becomes dissatisfied with procrastination of the claimant."

And again on page 129, the Court said:

"* * * Naming the subjects of liens and the conditions for their registration and enforcement is a familiar legislative power. We are given no reference to precedents (and we know of none) against inclusion of public moneys and securities of the legislating sovereign, (as and when payable or deliverable to contractors, etc.) within the subject matter of liens declared for materialmen, mechanics, etc. And when the lien (in this chapter provided) attaches, the property to which it attaches is the property of the contracting debtor and not of the state or municipality, the latter being debtor of that debtor or bailee, etc. Perforce, there is no contempt of the letter or spirit of Section 50, article 3, of the Constitution, to which we assume counsel intended to refer."

Hon. D. C. Greer, page 7

In the case of Republic National Bank and Trust Company v. Massachusetts Bonding & Insurance Company, 68 Fed. (2d) 445, Honorable Judge Sibley of the Circuit Court of Appeals, in dealing with the case in which the surety on the bond of the contractor was suing to recall moneys that had been paid out by the city on the proposed assignment of the contractor to a bank, before the affidavit above mentioned in proof of payment of all claims had been made, said in plain language at page 447, with reference to that fact situation, as follows:

"His (the surety's) equity originates in the agreement of the city and the contractor, reinforced by the act of 1929 to the same effect, that certain percentages of the earned payments shall be reserved for a final payment for the security of the city and surety, and equity treating this fund as a trust will see to its protection and application, recalling it if misapplied. This is the heart of the bill. Prairie State National Bank v. United States, 164 U. S. 227; Glades County v. Detroit Fidelity & Surety Co., 57 F. (2d) 449; First National Bank v. Fidelity & Deposit Co., 65 F. (2d) 959; Fidelity & Deposit Co. of Maryland v. Claiborne Parrish School Board, 11 F. (2d) 404."

In the case of Smith v. Texas Company, 53 S. W. (2d) 774, at page 777, the Court said:

"Senate Bill 74, Acts 39th Legislature (1925) C. 186, P. 456 (V.A.C.S., Arts. 6674a-6674n) was enacted by the same legislature which passed Articles 5472a and 5472b.

"It provides that the State shall retain 10% of the contract price until the work has been accepted, and it expressly forbids final payment of the retained sum until it is shown that 'all sums of money due for any labor, materials, or equipment furnished for the purpose of such improvements made under any such contract have been paid.' Sec. 13 of the Act (V.A.C.S., Art. 6674m). It is proper to construe this Act as a part of the legislation providing for the lien in question, as it relates to the same subject matter and was passed at the same Session of the Legislature."

And again at the top of page 777, the Court said:

"It was the intention of the Legislature
to enable those furnishing labor, material, etc.
to a sub-contractor for any public improvement
to receive payment therefor to the extent of any
unpaid balance due said sub-contractor at the
time notice required by statute is given.

* * * *

"We also conclude that the filing of the
notice with the State Highway Commission was a
strict compliance with the provision of the act,
which requires the same to be filed with the of-
ficial, whose duty it is to pay the original con-
tractor. Winder Bros. v. Sterling, 118 Tex. 268,
12 S. W. (2d) 127, 14 S. W. (2d) 802; Metropolitan
Casualty Ins. Co. v. Cheaney, et al., (Tex. Civ.
App.) 32 S. W. (2d) 691; West Chicago Park Com'rs.
v. Western Granite Co., 200 Ill. 527, 66 N. E. 37;
James P. Hall, Inc., v. Jersey City, 62 N. J. Eq.
489, 50 A. 603.

"* * *

"All money deposited to the credit of the
highway fund is by the terms of article 6674e
made subject to appropriation for the specific
purpose of said improvement of said system of
state highways by the highway department.

"It thus appears that the Legislature has
established a department and clothed it with full
and complete authority to make contracts for the
improvement of state highways and created a special
fund out of which the obligations made by such de-
partment shall be discharged. The highway commis-
sion is charged with the duty of paying these obli-
gations from this special fund. When consideration
is given to the statutes vesting control over de-
signated state highways in the state highway commis-
sion, and authorizing such body to contract and ex-
pend funds set apart for that purpose, it becomes
obvious that such department is the one whose duty

it is to pay contractors for work performed upon
state highways. It is true that the state treasurer
actually pays out the money on deposit to the credit
of the highway department, as is generally the case
with all obligations made by a state department for
and on behalf of the state. He does this, however,
as a mere disbursing officer and on vouchers issued
and approved by a majority of the highway commission.
He has no discretion in paying claims of contractors
when they are properly approved by the highway commis-
sion. Certinly such discretion was intended to be
lodged with the official whose duty it is to pay off
and discharge such obligations. The Legislature might
have made provision for the special highway fund to
be deposited in some private banking institution.
If it had done so, such bank would actually pay the
vouchers issued by the highway department, but under
such circumstances it could in no proper sense be con-
sidered the official whose duty it was to pay con-
tractors for services performed under their contracts."

In the case of F. C. Crane v. Chas. C. Bellar, 135
S. W. (2d) 167, the Court held that a materialman's action to
establish a lien on moneys due or to become due to a public
contractor under the statute authorizing such a lien on the
filing of notice is a species of "garnishment;" Vernon's
Annotated Statutes, Articles 5160, 5372a, 5472b, 6674m.

By reason of the foregoing authorities, it is the
opinion of this department that the Legislature has put the
money ordered paid by the court in the judgment in the case of
E. I. duPont deNemours & Company, et al, v. Brady P. Gentry,
Chairman of the State Highway Commission, et al, beyond their
further power to reappropriate the same.

The money retained by the Highway Department on the
original contract, as same fell due and became impounded by
the filing of notices by lien claimants, has placed such funds
upon which such liens attached at the time of the filing of
such notices, out of the hands of the Legislature and the State
of Texas, and said money then became the property of the con-
tracting debtor or his sub-contractor or lien claimants as the

court may decree, and was no longer property of the State, the State being merely a debtor or debtor above bailee and such money became in law a trust fund held by the State officials for final payment in accordance with the judgment of the court in said case. We are, therefore, of the opinion that the disbursement of such funds at this time in accordance with the judgment of the court in such case would not be in contravention of Article 8, Section 6 of the Constitution of Texas, and, therefore, Article 4357, supra, would not apply.

Trusting that this letter answers your inquiries satisfactorily, we beg to remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED FEB 18, 1944

ATTORNEY GENERAL OF TEXAS

By
Eugene N. Catlett
Assistant

ENC:KF